IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

|                          |   |                      |
|--------------------------|---|----------------------|
| KEITH TAYLOR,            |   |                      |
|                          |   |                      |
|     Plaintiff, |   |                      |
|                          |   |                      |
| vs.                      |   | No. 06-2412-JPM-dkv  |
|                          |   |                      |
| SERGEANT BOYD, et al.,   |   |                      |
|                          |   |                      |
|     Defendants. |   |                      |

---

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

On June 29, 2006, Plaintiff Keith Taylor, Tennessee Department of Correction prisoner number 206607, an inmate at the West Tennessee State Penitentiary in Henning, Tennessee, filed a pro se complaint pursuant to 42 U.S.C. § 1983 against Correctional Sergeant Kenneth Boyd, Correctional Sergeant Jerry Lyons, Case Manager Norman Layne, Inmate Relations Coordinator ("IRC") Famous Hurdle (who was identified in the complaint as "Hurttle"), and Corporal Daniel Enochs (who was identified in the complaint as "Enoch"). (Docket Entry ("D.E.") 1.) The Court issued an order on January 26, 2007 that, inter alia, directed the Clerk to issue summonses for, and the marshal to effect service on, Defendants. (D.E. 5.) Defendants answered the complaint on April 18, 2007. (D.E. 22.)

On March 3, 2008, Defendants filed a motion for summary judgment, supported by a statement of undisputed facts; the

affidavits of Kenneth Boyd, Jerry Lyons, Norman Layne, Famous Hurdle, Daniel Enochs, Samantha Phillips, and Terry Sellers; and an excerpt from the deposition of Plaintiff, which was taken on January 17, 2008. (D.E. 43.) Plaintiff's response, which included his own declaration and the affidavits of inmates Michael Mosby and John Spates, Jr., was filed on April 28, 2008. (D.E. 63.)

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

Under Fed. R. Civ. P. 56(e), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as

the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." <u>Kochins v. Linden-Alimak, Inc.</u>, 799 F.2d 1128, 1133 (6th Cir. 1986); <u>see also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986) (same).[1]

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>id.</u> at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); <u>Matsushita</u>, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. <u>Liberty Lobby</u>, 477 U.S. at 249. Rather, the inquiry

---

[1]     Rule 56(e) sets forth in detail the evidentiary requirements applicable to a summary judgment motion:

        Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to all the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

Moreover, Fed. R. Civ. P. 56(f) provides as follows:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

"Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." Cacevic v. City of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000); see also Good v. Ohio Edison Co., 149 F.3d 413, 422 (6th Cir. 1998); Plott v. General Motors Corp., 71 F.3d 1190, 1196-97 (6th Cir. 1995). Moreover, the Sixth Circuit has held that, unless the nonmoving party files a Rule 56(f) affidavit, a district court cannot decline to consider the merits of a summary judgment motion on the ground that it is premature. Wallin v. Norman, 317 F.3d 558, 564 (6th Cir. 2003).

The Court finds the following facts to be undisputed for purposes of this motion:

1. The plaintiff, Keith Taylor, is an inmate in the custody of the Tennessee Department of Correction ("TDOC") who was housed at the West Tennessee State Penitentiary ("WTSP") at all times relevant to his complaint. (Compl., ¶ 2; D.E. 63-4 at 1-2.)

2. At the time of the events alleged in his complaint, Plaintiff was a maximum security inmate housed in

4

unit 1 at WTSP. (Affidavit of Jerry Lyons, sworn to on Mar. 4, 2008 ("Lyons Aff."), ¶ 3 (D.E. 46-2); D.E. 63-4 at 2.)

3.  On April 13, 2006, Plaintiff made threats towards a correctional officer. (Affidavit of Daniel Enochs, sworn to on Feb. 28, 2008 ("Enochs Aff."), ¶ 6 (D.E. 43-9).)[2]

4.  A search of Plaintiff's cell was ordered. (Enochs Aff., ¶ 5; Lyons Aff., ¶ 5; D.E. 63-4 at 2.)

5.  Before a maximum security inmate is allowed out of his cell, he is first handcuffed through the "pie flap" in the cell door. (Lyons Aff., ¶ 3; D.E. 63-4 at 2.)

6.  After a maximum security inmate is handcuffed, the cell door is opened and leg restraints are placed on the inmate. (Lyons Aff., ¶ 3.)[3]

7.  Plaintiff refused numerous requests to back up to the cell's pie flap and submit to handcuffs. (Enochs Aff., ¶ 7; Affidavit of Kenneth Boyd, sworn to on

_____

[2]     In his response to Defendants' proposed undisputed facts, Plaintiff denies that he made threats, but he has not cited any portion of the record in support of his position, as required by Local Rule 7.2(d)(3). In his declaration, which was submitted in opposition to the summary judgment motion, Plaintiff asserted that, "[o]n April 13, 2006 I got into a verbal confrontation with a corrections officer in which I used profanity towards this officer, and my profanity lead to a [sic] order by the defendants to conduct a cell search." Undated Declaration of Keith Taylor ("Taylor Decl."), ¶ 5 (D.E. 63-5).) Plaintiff also asserts, vaguely, that "I had'nt [sic] committed any prison violation that would justify a cell search" (id., ¶ 5), but he does not directly address Defendants' contention that he made threats toward Correctional Officer Brenda Person. In the absence of any admissible evidence to counter the sworn statement of Defendant Enochs, this proposed finding is deemed admitted.

Even if that were not the case, any factual dispute on this matter is immaterial. Plaintiff has raised no claim about the legality of the cell search but, rather, complains that items were taken from him.

[3]     Plaintiff's response to Defendants' statement of undisputed facts is missing the page that addresses proposed factual findings nos. 6-9. As the other material submitted by Plaintiff does not raise a material factual issue, this proposed finding is deemed admitted.

Feb. 29, 2008 ("Boyd Aff."), ¶ 4 (D.E. 43-5); Taylor Decl., ¶¶ 5-7.)[4]

8.  Defendant Lyons notified the shift officer-in-charge of Plaintiff's refusal to comply with the orders to submit to handcuffs. (Lyons Aff., ¶ 7.)

9.  Plaintiff was extracted from his cell by a cell extraction team. (Boyd Aff., ¶ 5; Lyons Aff., ¶ 6; Enochs Aff., ¶ 9; Taylor Decl., ¶¶ 7, 11.)[5]

10. Defendant Boyd observed the cell extraction team remove Plaintiff from his cell. (Boyd Aff., ¶ 5; D.E. 63-4 at 3.)[6]

13. Defendant Lyons observed the cell extraction team remove Plaintiff from his cell. (Lyons Aff., ¶ 6; D.E. 63-4 at 3-4.)

14. Defendant Lyons observed the cell extraction team escort Plaintiff to unit 1 delta pod's active room. (Lyons Aff., ¶ 6; D.E. 63-4 at 4.)

15. Defendant Lyons then escorted Plaintiff back to his cell. (Lyons Aff., ¶ 7; D.E. 63-4 at 4.)

18. Plaintiff was dry celled on April 13, 2006. (Enochs Aff., ¶ 10; Affidavit of Norman Layne, sworn to on Feb. 28, 2008 ("Layne Aff."), ¶ 4 (D.E. 43-7); Affidavit of Famous Hurdle, sworn to on Feb. 28, 2008 ("Hurdle Aff."), ¶ 4 (D.E. 43-8); D.E. 63-4 at 5.)

19. Plaintiff's property was packed and removed from his cell by Defendants Enochs, Layne, and Hurdle. (Enochs Aff., ¶ 10; Layne Aff., ¶ 4; Hurdle Aff., ¶ 4; D.E. 63-4 at 5.)

-----

[4]    In his declaration, Plaintiff contends that he refused to submit to handcuffs because he believed he had not committed a violation that would justify a cell search and because he believed the officers intended to assault him. Taylor Decl., ¶ 5. Plaintiff's reasons for refusing to submit to handcuffs are not relevant, as the complaint raises no claim that Defendants were not entitled to remove Plaintiff from his cell and search it.

[5]    As discussed infra, none of the defendants assisted in the removal of Plaintiff from his cell. The complaint does not allege that excessive force was used in effecting his removal.

[6]    The omitted numbers correspond to proposed factual findings submitted by Defendants as to which Plaintiff has raised a genuine issue of material fact. They will be addressed infra.

47. The temperature in each building at WTSP is computer regulated. (Affidavit of Terry Sellers, sworn to on Feb. 29, 2008 ("Sellers Aff."), ¶ 4.)

49. When the temperature in a building drops below 74 degrees, the boiler for that building begins to provide heat to the building in order to reach the 74 to 76 degree set point. (Sellers Aff., ¶ 4.)

50. There were no work orders concerning the temperature in unit 1 being too cold in April 2006. (Sellers Aff., ¶ 6.)

There are several material factual disputes pertinent to Plaintiff's claims. Defendants submitted proposed factual finding no. 11, supported by ¶ 5 of the Boyd Affidavit, that, after Plaintiff was extracted from his cell, "Defendant Boyd then left the unit to return to his assigned post on the yard." This proposed finding was contradicted by Plaintiff, who stated, in his declaration, that he heard Defendant Boyd give the order to remove Plaintiff's mattress from his cell, Taylor Decl., ¶ 8, and by inmate Mosby, Affidavit of Michael Mosby, sworn to on Apr. 14, 2008 ("Mosby Aff."), ¶ 7 (D.E. 63-2 at 25).

Defendants also submitted proposed factual finding no. 12, supported by ¶ 5 of the Boyd Affidavit, that "Defendant Boyd did not return to unit 1 and did not escort Plaintiff to or from his cell at any time during his shift on April 13, 2008." In his response to this proposed factual finding, Plaintiff agreed that Defendant Boyd did not escort him from his cell. (D.E. 63-4 at 3.) However, Plaintiff and inmate Mosby have stated that Defendants Boyd and Lyons escorted Plaintiff to his cell from the unit 1 delta pod's active room. Taylor Decl., ¶ 13; Mosby Aff., ¶ 11 (D.E. 63-2 at 25-26).

Defendants submitted proposed factual finding nos. 16, that, once Plaintiff was returned to his cell, "Defendant Lyons did not order the plaintiff to strip down to his boxer shorts and t-shirt," and 17, that, "[w]hen defendant Lyons left the plaintiff in his cell, plaintiff was wearing his white segregation uniform." Both proposed findings are supported by ¶ 7 of the Lyons Affidavit and are contradicted by Plaintiff and inmate Mosby. Taylor Decl., ¶¶ 14-15; Mosby Aff., ¶¶ 12, 14.

Defendants submitted several proposed factual findings (nos. 20-25) denying that Defendants Enochs, Layne, and Hurdle removed Plaintiff's inhaler or asthma medication. Those proposed findings are supported by ¶ 10 of the Enochs Affidavit, ¶ 4 of the Layne Affidavit, and ¶ 4 of the Hurdle Affidavit. As Plaintiff concedes, he was not in his cell while his property was removed, and he has no personal knowledge of what any defendant saw or which defendant removed his asthma inhaler. (D.E. 63-4 at 5-7.) Plaintiff stated in his declaration that, when Defendants Lyons and Boyd returned him to his cell, "I began looking around my cell and once I seen [sic] that my asthma inhalers were missing I immediately told Defendants Lyons and Boyd that my inhalers had been taken also and that I needed them back." Taylor Decl., ¶ 16; see also Mosby Aff., ¶¶ 13, 15. There is a triable issue of fact as to whether Plaintiff's inhaler or asthma medication was taken during the cell search.

Defendants' proposed factual finding no. 26, that "[t]he plaintiff's property was removed from his cell, but the cell still contained a mattress and a blanket as those items were not confiscated," is supported by ¶ 11 of the Enochs Affidavit, ¶ 5 of

the Layne Affidavit, and ¶ 5 of the Hurdle Affidavit. The proposed finding is contradicted by both Plaintiff and Mosby. Taylor Decl., ¶¶ 9-10; Mosby Aff., ¶ 8.

Defendants submitted several proposed factual findings (nos. 27-29, 31-33) denying that Plaintiff informed Defendants Enochs, Layne, and Hurdle that his asthma inhalants were missing from his cell and asked that they be returned. Those proposed findings are supported by ¶ 12 of the Enochs Affidavit, ¶ 6 of the Layne Affidavit, and ¶ 6 of the Hurdle Affidavit. Plaintiff stated in his declaration that "I filed a request form to unit 1 unit team asking to have my inhalers returned to me but no one ever answered my request." Taylor Decl., ¶ 22. Plaintiff also asserted that he "continued to send verbal messages through officers, out to the unit team that I need my inhalers out of my property that was confiscated, but the officers would always say that no-one [sic] said [sic] anything in return." Id., ¶ 23; see also Mosby Aff., ¶ 19. Although Plaintiff does not specifically mention any statement he made to Defendants Enochs, Layne, and Hurdle, all three defendants are part of the unit 1 team, Enochs Aff., ¶¶ 2-3; Layne Aff., ¶¶ 2-3; Hurdle Aff., ¶¶ 2-3, and Plaintiff has come forward with sufficient evidence to permit a jury to conclude that these defendants were aware of Plaintiff's requests for his inhalers.[7]

---

[7] Defendants also submitted proposed factual findings nos. 30 and 34, denying that Plaintiff informed any defendant that his asthma inhalants were missing from his cell and asked that they be returned. Those proposed findings are contradicted by the discussion in the text and by Plaintiff's statement that he informed Defendants Lyons and Boyd that his inhalers were missing and asked that they be returned. Taylor Decl., ¶ 16; Mosby Aff., ¶¶ 13, 15.

Defendants submitted several proposed factual findings (nos. 35-39) that Defendants Boyd, Lyons, Enochs, Layne, and Hurdle had no personal knowledge of Plaintiff's health or medical requirements and had never witnessed Plaintiff have an asthma attack. Those proposed findings are supported by ¶ 5 of the Boyd Affidavit, ¶ 8 of the Lyons Affidavit, ¶ 12 of the Enochs Affidavit, ¶ 6 of the Layne Affidavit, and ¶ 6 of the Hurdle Affidavit. Plaintiff concedes that none of the defendants have seem him have an asthma attack. (D.E. 63-4 at 9-11.) Plaintiff's requests for his inhalers, after his property was removed from his cell, is sufficient to create a factual issue as to whether any defendant was on notice that Plaintiff suffered from asthma and had been prescribed an inhaler.

Defendants submitted proposed factual finding no. 48, that "[t]he temperature in each building at WTSP is maintained between 74 and 76 degrees Fahrenheit year round." This is supported by ¶ 4 of the Sellers Affidavit, which only proves that the thermostats are set at the indicated temperatures, not that the temperatures in the cells do not fluctuate in response to changes in the weather. Plaintiff has stated that, "[f]rom April 13, 2006 to April 19, 2006 the temperature outside was pretty warm and the cooling system was on in the building, so by having nothing on but a t-shirt, boxers and socks I became very cold the longer and longer I stayed in the cell." Taylor Decl., ¶ 24; see also Mosby Aff., ¶¶ 16-17. Even if there are occasional temperature fluctuations when the weather changes, however, Plaintiff has not attempted to document the length of time he was cold during the week he was dry celled.

Plaintiff's claims arise under the Eighth Amendment, which prohibits cruel and unusual punishment. See generally Wilson v. Seiter, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson, 501 U.S. at 298; Brooks v. Celeste, 39 F.3d 125, 127-28 (6th Cir. 1994); Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." Farmer, 511 U.S. at 834; Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834; Stewart v. Love, 796 F.2d 43, 44 (6th Cir. 1982), or that he has been deprived of the "minimal civilized measure of life's necessities," Wilson, 501 U.S. at 298 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The Constitution "'does not mandate comfortable prisons.'" Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 349). Rather, "routine discomfort 'is part of the penalty that criminal offenders pay for their offenses against society.'" Hudson, 503 U.S. at 9 (quoting Rhodes, 452 U.S. at 347).

In considering the types of conditions that constitute a substantial risk of serious harm, the Court considers not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency, i.e., that society does not choose to tolerate this risk in its prisons. Helling v.

McKinney, 509 U.S. 25, 36 (1993). The Supreme Court has also emphasized that prisoners can rarely establish an Eighth Amendment violation from a combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. . . . To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

Wilson, 501 U.S. at 304-05 (citations omitted; emphasis added); see also Thompson v. County of Medina, Ohio, 29 F.3d 238, 242 (6th Cir. 1994); Walker v. Mintzes, 771 F.2d 920, 925026 (6th Cir. 1985).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 297, 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303; Helling v. McKinney, 509 U.S. 25, 32 (1993); Woods v. Lecureux, 110 F.3d 1215, 1222 (6th Cir. 1997); Street v. Corrections Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996); Taylor v. Michigan Dep't of Corrections, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. Thus,

12

> [a] prison official cannot be found liable under the Eighth
> Amendment for denying an inmate humane conditions of
> confinement unless the official knows of and disregards an
> excessive risk to inmate health or safety; the official
> must both be aware of facts from which the inference could
> be drawn that a substantial risk of serious harm exists,
> and he must also draw the inference. This approach comports
> best with the text of the Eighth Amendment as our cases
> have interpreted it. The Eighth Amendment does not outlaw
> cruel and unusual "conditions"; it outlaws cruel and
> unusual "punishments." An act or omission unaccompanied by
> knowledge of a significant risk of harm might well be
> something society wishes to discourage, and if harm does
> result society might well wish to assure compensation. The
> common law reflects such concerns when it imposes tort
> liability on a purely objective basis. . . . But an
> official's failure to alleviate a significant risk that he
> should have perceived but did not, while no cause for
> commendation, cannot under our cases be condemned as the
> infliction of punishment.

Id. at 837-38 (emphasis added; citations omitted); see also Garretson
v. City of Madison Heights, 407 F.3d 789, 796 (6th Cir. 2005) ("If
the officers failed to act in the face of an obvious risk of which
they should have known but did not, then they did not violate the
Fourteenth Amendment.").

Defendants contend that the conditions in Plaintiff's "dry
cell" did not violate the Eighth Amendment. (D.E. 43-2 at 13-15.)
"The circumstances, nature, and duration of a deprivation . . . must
be considered in determining whether a constitutional violation has
occurred.'" Spencer v. Bouchard, 449 F.3d at 727 (quoting Johnson v.
Lewis, 217 F.3d 726, 731 (9th Cir. 2000)). In this case, the events
at issue were precipitated when Plaintiff called a female
correctional officer, who was not a party to this action, a "bitch"
and a "whore." (D.E. 1 at 3, 14.) Plaintiff also made threats to the
officer. (FF 3; see supra p. 5 & n.2.) Plaintiff refused a direct
order to submit to being handcuffed so he could be removed from his

cell (FF 7), and one of the members of the extraction team sustained a minor injury to his hand in the course of forcibly restraining Plaintiff and removing him from his cell (Enochs Aff., ¶ 9.) Plaintiff was issued three disciplinary write-ups, for disrespect, refusing a direct order, and assault on staff (id., ¶¶ 5, 8, 9), although the record does not reflect the outcome of those disciplinary charges.

Plaintiff was "dry celled" for one week, from April 13, 2006 through April 19, 2006, and, for purposes of this motion, it will be assumed that Plaintiff's cell did not contain a mattress, sheets, or blankets and that Plaintiff was dressed in only shorts, a t-shirt, and socks. The Sixth Circuit has held that, in the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment. Grissom v. Davis, 55 F. App'x 756, 757 (6th Cir. 2003); Shaw v. Mangione, 27 F. App'x 407, 407 (6th Cir. 2001); Jones v. Toombs, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996) ("The defendants did not violate Jones's Eighth Amendment rights by depriving him of a mattress for a two-week period."); Kelly v. Holman, No. 2:07-CV-206, 2008 WL 2795668, at *2 (W.D. Mich. July 18, 2008); Jones v. Strode, Civil Action No. 1:07CV-P141-M, 2008 WL 926573, at *1 (W.D. Ky. Apr. 7, 2008); Anthony v. Maki, No. 2:05-CV-66, 2006 WL 616706 (W.D. Mich. Mar. 9, 2006); see also Wells v. Jefferson County Sheriff Dep't, 35 F. App'x 142, 143 (6th Cir. 2002) (no Eighth Amendment violation where inmate slept on mattress on floor in a cold cell for 6 days). In Reynolds v. Mattson, No. 2:07-CV-59, 2008 WL 2704750, at *1 (W.D. Mich. July 9, 2008), no

14

Eighth Amendment violation was found where the plaintiff was placed in an observation room for suicide watch and was "not allowed sheets, blankets, pillows, pillow cases or towels, and was not allowed clothing except for underwear and a suicide prevention gown." See also Harris v. Hulkoff, No. 2:05-cv-198, 2007 WL 2479467, at *3-*4 (W.D. Mich. Aug. 28, 2007) (granting summary judgment for defendants on claim that inmate was housed for 52 hours in a very cold suicide prevention cell, dressed only in a gown, with no blanket); Bean v. Monroe, No. 2:04-CV-230, 2006 WL 625864, at *1, *5 (W.D. Mich. Mar. 9, 2006) (no Eighth Amendment violation where Plaintiff was left in a cold cell, dressed in a gown, with no mattress or blanket).

The fact that Plaintiff has also come forward with evidence that the temperature in his cell was cold during some of the week he was "dry celled" does not alter this analysis. It is undisputed that the temperature in each building at the WTSP is computer controlled and regulation (FF 47), and that there were no work orders concerning the temperature in unit 1 being too cold in April 2006 (FF 50). The thermostat is set between 74 and 76 degrees (Sellers Aff., ¶ 4), and, when the temperature in a building drops below 74 degrees, the boiler for that building begins to provide heat to the building in order to reach the 74 to 76 degree set point (FF 49). In response, Plaintiff states as follows:

24. From April 13, 2006 to April 19, 2006 the temperature outside was pretty warm and the cooling system was on in the building, so by having nothing on but a t-shirt, boxers and socks I became very cold the longer and longer I stayed in the cell.

>       25.   I either had to crawl under the table, bunk or hudle
>             [sic] at the door to try to escape the cold air
>             coming from the vent, while balled up inside my t-
>             shirt.

Taylor Decl., ¶¶ 24-25; <u>see also</u> Mosby Aff., ¶¶ 16-18. Plaintiff's alleged exposure to the cold occurred in mid-April, when, as he concedes, the temperature outside was warm. Plaintiff has not presented any evidence of the temperature inside his cell and, as previously noted, <u>see</u> <u>supra</u> p. 10, Plaintiff also has not attempted to document the length of time he was cold during the week he was dry celled. The fact that Plaintiff, subjectively, felt cold is insufficient to satisfy the objective component of an Eighth Amendment violation. <u>Harris v. Hulkoff</u>, 2007 WL 2479467, at *4 ("Plaintiff here has alleged that he subjectively felt cold, but has not presented evidence indicating that the cells were objectively so cold as to present a health risk to persons confined in them. . . . Accordingly, Plaintiff has failed to demonstrate a sufficiently grave deprivation to establish a violation of his rights under the Eighth Amendment."). Finally, even if Plaintiff's cell were cold, there is no evidence that any defendant was actually aware of the temperature in his cell.

Plaintiff has also asserted an Eighth Amendment claim because, during the week he was "dry celled," he was deprived of toiletries and hygiene products, including soap, toothpaste, a toothbrush, deodorant, shower shoes, a bath towel, and a wash cloth. (D.E. 1 at 5.) These items were returned on April 19, 2006, at the end of the "dry cell" period. (<u>Id.</u> at 7.) As a result, Plaintiff was unable to brush his teeth and wash his face, and he also could not

take a shower because he had no towel. (<u>Id.</u> at 8.) Those temporary deprivations, although unpleasant, do not violate the Eighth Amendment. <u>Siller v. Dean</u>, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000) ("Given the brief span of time that Dean allegedly refused to permit Siller access to a shower and other (unspecified) personal hygiene items, i.e., only six days, the conduct is not actionable."); <u>Gilland</u>, 718 F. Supp. at 685 ("Short term deprivations of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes and the like do not rise to the level of a constitutional violation."); <u>see also</u> <u>Harris v. Fleming</u>, 839 F.2d 1232, 1234, 1235 (7th Cir. 1986).[8]

---

[8]     Defendants also seek the dismissal of Plaintiff's complaint pursuant to 42 U.S.C. § 1997e(e), which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." (D.E. 43-2 at 15.) This argument overlooks the fact that Plaintiff has alleged that he suffered an asthma attack because he was deprived of his inhalers. Moreover, § 1997e(e), on its face, does not address the availability of nominal damages and, potentially, punitive damages for the Eighth Amendment violation even in the absence of physical injury. Although the Sixth Circuit has not had the opportunity to address this issue, other courts have held that § 1997e(e) does not preclude nominal damages. <u>See</u>, <u>e.g.</u>, <u>Whitman v. Washington</u>, 113 F. App'x 605, 606 (5th Cir. 2004); <u>Herron v. Patrolman #1</u>, 111 F. App'x 710, 713 (5th Cir. 2004) ("We acknowledge that lawsuits by arrestees, detainees, or prisoners who cannot allege a sufficiently serious physical injury to support psychological injury are not necessarily barred altogether by § 1997e(e). Physical injury is a predicate to an award of compensatory damages for mental or emotional injury; its absence does not necessarily preclude recovery of, <u>e.g.</u>, injunctive relief or nominal damages for constitutional injuries."); <u>Royal v. Kautzky</u>, 375 F.3d 720, 723 (8th Cir. 2004); <u>Hughes v. Lott</u>, 350 F.3d 1157, 1162-63 (11th Cir. 2003); <u>Calhoun v. DeTella</u>, 319 F.3d 936, 940-43 (7th Cir. 2003); <u>Mitchell v. Horn</u>, 318 F.3d 523, 533 (3d Cir. 2003); <u>Oliver v. Keller</u>, 289 F.3d 623, 629-30 (9th Cir. 2002); <u>Thompson v. Carter</u>, 284 F.3d 411, 418 (2d Cir. 2002); <u>Searles v. Van Bebber</u>, 251 F.3d 869, 878-79, 880-81 (10th Cir. 2001); <u>cf.</u> <u>Miller v. Bock</u>, 55 Fed. Appx. 310, at *2 (6th Cir. Jan. 28, 2003) (noting that "claims for [punitive] damages are not necessarily barred by section 1997e(e)"). This aspect of Defendants' motion is without merit and is DENIED.

For all the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's claims that he was deprived of a mattress, bedding, clothing, and personal hygiene supplies and that he was housed in a cold cell.

Defendants have also moved for summary judgment on Plaintiff's claim of deliberate indifference to his serious medical needs due to the seizure of his inhaler in the cell search and the subsequent failure to return it. (D.E. 43-2 at 6-12.) "The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment." Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" Id. at 874 (quoting Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001)); see also Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir. 2004)("The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs. . . . Prison officials' deliberate indifference violates these rights '[w]hen the indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care . . . ' for a serious medical need.") (quoting Estelle v. McGuire, 429 U.S. 97, 104 (1976)). "Although the right to adequate medical care does not encompass the right to be diagnosed correctly, [the Sixth Circuit]

has 'long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner.'" <u>Johnson</u>, 398 F.3d at 874 (quoting <u>Danese v. Asman</u>, 875 F.2d 1239, 1244 (6th Cir. 1989)).

The objective component of an Eighth Amendment claim based on a failure to provide adequate medical care requires that a prisoner have a serious medical need. <u>Blackmore</u>, 390 F.3d at 896; <u>Brooks</u>, 39 F.3d at 128. This component can be satisfied in two ways. "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment <u>or</u> one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" <u>Blackmore</u>, 390 F.3d at 897 (emphasis in original); <u>see also</u> <u>Johnson</u>, 398 F.3d at 874.

If a prisoner's need for medical attention is not obvious, "the seriousness of a prisoner's medical needs 'may also be decided by the effect of delay in treatment.'" <u>Blackmore</u>, 390 F.3d at 897 (emphasis omitted).[9] Where a prisoner complains about a delay in medical treatment, the Court will "examine the seriousness of a

_____

[9]    The Sixth Circuit elaborated:

These decisions involve prisoner claims of delay in treatment that caused injury, loss, or handicap. . . . Other examples involve delayed administration of medication. . . , or a prisoner's refusal to take the prescribed medication . . . , or occasional missed doses of medication . . . , or claims based on a determination by medical personnel that medical treatment was unnecessary. . . . Also within this branch are decisions involving whether the prisoner was treated adequately . . . or whether any delay in providing medical care was harmless . . . , or where the prisoner had a "very minor injury for which many people outside prison would not even think of seeking outside medical treatment."

<u>Id.</u> at 898 (citations omitted).

deprivation by examining the effect of the delay in treatment." Napier v. Madison County, Ky., 238 F.3d 739, 742 (6th Cir. 2001). In those cases, "'[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical information in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" Id.; see also Johnson, 398 F.3d at 874.

The Sixth Circuit has emphasized that

> The "verifying medical evidence" requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care. . . . Napier does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. Napier applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

Blackmore, 390 F.3d at 898. Where a prisoner's need for medical attention is obvious, "the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." Id. at 900.[10] In those cases, the prisoner may recover for the pain and suffering attributable to the

---

[10]  See also Garretson, 407 F.3d at 797 ("Here, Garretson is a diabetic whose condition required insulin injections at regulated intervals—a medically required treatment which she did not receive while housed at Madison Heights. As a result of this omission, she was later admitted to the hospital. Even without specific medical records, the emergency hospital admission coupled with a stay of several days satisfies the objective requirement of a 'sufficiently serious' medical need under Farmer and Napier.").

delay. <u>Id.</u> at 899 ("In such cases, the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition. Blackmore was suffering from appendicitis, and it is sufficient that the officers' delay in treatment of an obvious medical emergency posed a substantial risk of serious harm to Blackmore by subjecting him to unnecessary infliction of pain.").

The evidence in this case is more than sufficient to require a trial on whether Defendants were deliberately indifferent to Plaintiff's serious medical need. In his declaration, Plaintiff stated as follows:

16.  I began looking around my cell and once I seen that my asthma inhalers were missing I immediately told Defendants Lyons and Boyd that my inhalers had been taken also and that I needed them back.

17.  Both defendants told me that I had nothing coming and they left the pod with my segregation uniform in hand.

18.  When the first staff nurse came in the pod to pass out morning medication I told her that my asthma inhalers had been confiscated during a cell-search and that I need some more inhalers. She told me she would check my records . . . .

19.  After a physical altercation with an inmate by corrections officer [sic] the inmate per policy, has to be seen by medical staff.

20.  On April 13, 2006 at approximately 12:00 P.M. I was pulled from my cell and examined.

21.  During the examination I told the nurse that the correction officers took my asthma inhalers and that I needed some more, and she told me that my medical chart showed that I had just been given two inhalers and that I would'nt [sic] be able to receive anymore [sic] until next month because they has to be ordered from Indiana PA.

22.  I filed a request form to unit 1 unit team asking to have my inhalers returned to me but on-one ever answered my request.

23. I continued to send verbal messages through officers out to the unit team that I needed my inhalers out of my property that was confiscated, but the officers would always say that no-one said anything in return.

. . . .

28. On April 17, 2006 I suffered an asthma attack and had to be taken to the infirmary to be placed on a sulfate solution nebulizer breathing machine because I had no inhalers.

Taylor Decl., ¶¶ 16-23, 28; see also Mosby Aff., ¶¶ 15, 19-23; supra pp. 8, 9-10.

Defendants have presented the affidavit of Samantha M. Phillips, the Health Administrator at the WTSP, that stated that the proper procedure for obtaining medical attention is to sign up on a sick call roster, and that, during the time he was dry celled, Plaintiff did not sign the roster complaining of asthma or requesting his inhalers. Affidavit of Samantha M. Phillps, sworn to on Mar. 3, 2008, ¶¶ 3-5. Although that affidavit may have some probative value,[11] that affidavit does not address the facts that (i) Plaintiff had a medical examination shortly after he was dry celled on April 13, 2006, at which time he was told new inhalers could not be provided to him; (ii) Plaintiff repeatedly asked the officers in unit 1, including Defendants, to return his inhalers, but either was refused

---

[11] The Court notes that Plaintiff has not sued the WTSP medical staff for refusing to provide him with replacements for the inhalers that were confiscated. Suwarsky v. Cornell, Nos. 87-2083, 87-2110, & 87-2140, 1989 WL 2106, at *2 (6th Cir. Jan. 12, 1989), on which Defendants rely (D.E. 43-2 at 9), addressed whether medical staff was deliberately indifferent by failing to respond to verbal requests for medical assistance by a prisoner who did not sign up for sick call. In this case, Plaintiff had already been told by a nurse that new inhalers would not be ordered, and his written and verbal requests to the unit team concerned the return of the inhalers that had been confiscated.

or received no response; and (iii) Plaintiff suffered an asthma attack on April 17, 2006.

Because Plaintiff's asthma was diagnosed by a physician, and medication was prescribed to treat it, he suffered from a serious medical need at the time of the events in question. <u>See, e.g.</u>, <u>Saylor v. O'Dea</u>, No. 96-6685, 1997 WL 693065, at *1 (6th Cir. Oct. 31, 1997); <u>McLain v. Secure Care, Inc.</u>, No. 04-73744, 2007 WL 1219048, at *3 (E.D. Mich. Apr. 24, 2007).[12] Regardless of whether any of the defendants had previous knowledge that Plaintiff suffered from asthma, a layperson would be aware that asthma is a serious condition that is sometimes treated with inhalers and that medication that has been prescribed by a physician should not be confiscated.

Therefore, the Court DENIES Defendants' motion for summary judgment on Plaintiff's claims that Defendants were deliberately indifferent to his serious medical needs.

IT IS SO ORDERED this 15th day of August, 2008.


/s/ JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE

---

[12] <u>Bates v. Sullivan</u>, 6 F. App'x 425 (7th Cir. 2001), on which Defendants rely (D.E. 43-2 at 9), is distinguishable. In <u>Bates</u>, the Seventh Circuit affirmed a grant of summary judgment on a claim that, on a single occasion, a prison guard refused to give an inmate his inhaler when he claimed to have difficulty breathing. In so holding, the Seventh Circuit noted that "asthma, depending on its degree, may be a serious medical condition," <u>id.</u> at 428, but there was no evidence in the record that the prisoner had a serious medical need for the inhaler at the precise moment when he asked for it, <u>id.</u> In this case, by contrast, Plaintiff did suffer an asthma attack.